**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT A. DANIELS, an individual, | 2:11-CV-00298-ECR-CWH |
| Plaintiff, | **Order** |
| vs. | |
| MARC S. JENSON, an individual; JOHN J. NELSON, an individual; KAREN HORTON BOND, an individual; JD MEDICAL HOLDINGS, INC., a Utah corporation; and DOE Individuals and ROE Entities 1-10, | |
| Defendants. | |

This cases arises out of allegations that Plaintiff was unlawfully ousted from a Utah company he co-founded.

### I. Factual Background

The factual allegations are as follows: Plaintiff Robert A. Daniels ("Plaintiff") is the President, fifty percent shareholder and co-founder of Defendant JD Medical Holdings, Inc. ("JDMH"). (Compl. at ¶ 5 (#1).)  Defendant Marc S. Jenson ("Jenson") is also the co-founder and a fifty percent shareholder of JDMH.  (Id. at ¶ 7.) JDMH is a corporation organized pursuant to the laws of the State of Utah with its principal place of business in Sandy, Utah. (Id. at ¶ 6.)

On or about May 20, 2002, Plaintiff and Jenson formed JDMH in Utah. (Id. at ¶ 10.)  On or about December, 2002, multiple patents and trademarks were assigned from Nortrade to JDMH d/b/a BurnFree. (Id. at ¶ 11.)  The State of Utah administratively dissolved JDMH on October 1, 2003. (Id. at ¶ 12.)

On December 14, 2005, a new corporation with the same name was formed.  All of the assets of the original 2002 entity were transferred to the newly formed JDMH. (Id. at ¶ 13.)

From formation of the company until 2006, Plaintiff lived in New Jersey and administered the company from there.  In 2006, Plaintiff relocated to southern Nevada, from where he continued to administer his duties relating to JDMH. (Decl. Daniels at ¶¶ 3-5 (#11-1).)

On or about June 12 to June 14, 2007, Plaintiff and Jenson executed a document entitled "Unanimous Written Consent of the Directors and Shareholders of JD Medical Holdings, Inc." ("2007 Consent Agreement").  (Compl. at ¶ 14 (#1).)  The 2007 Consent Agreement provided that Plaintiff and Jenson each received 1,000 shares of JDMH, making them each a fifty-percent shareholder.  (Id.)  The 2007 Consent Agreement contained a resolution electing Plaintiff, Jenson, and Trevor Larsen ("Larsen") to serve as directors of JDMH.  (Id.)  Larsen was later released as a director of JDMH.  (Id.)  Further, Plaintiff was elected President and Secretary of JDMH and Defendant Karen Horton Bond ("Bond") was elected Vice-President.  (Id.)  Finally, the 2007 Consent Agreement

2

1  continued the May 20, 2002 Shareholders Agreement between Plaintiff
2  and Jenson in full force and effect.  (Id. at  ¶ 15.)

3      On or about February 4, 2009, Jenson and Bond took Plaintiff
4  off the JDMH bank accounts, canceled Plaintiff's corporate checks,
5  canceled Plaintiff's access to JDMH credit cards, provided false
6  information to the bank, and changed the locks of the offices
7  without Plaintiff's knowledge.  (Id. at  ¶ 16.)

8      On February 10, 2009, Jenson wrote and Bond sent to Plaintiff a
9  "separation agreement" providing that $500,000.00 would be payable
10 to Plaintiff upon the sale of JDMH with $5,000.00 monthly net
11 payments to Plaintiff until the sale; the monthly payments would be
12 deducted from the proceeds of the sale; JDMH would pay Plaintiff's
13 health insurance through 2009; JDMH would pay Plaintiff a commission
14 on any deals Plaintiff brought in; and Plaintiff would relinquish
15 any claim on future compensation if he found employment with any
16 other medical device manufacturer.  (Id. at  ¶ 18.)

17     On February 10, 2009, Jenson appointed Bond President of JDMH
18 without Plaintiff's knowledge or consent.  (Id. at  ¶ 19.)  Jenson
19 and Bond told their employees and customers that Plaintiff had
20 stepped down as President of JDMH.  (Id. at  ¶ 20.)

21     Jenson and Bond paid Plaintiff nine net payments of $5,000.00
22 per month from JDMH throughout 2009 before discontinuing the
23 payments.  Plaintiff objected orally and in writing.  (Id. at  ¶
24 21.)

25     In July 2010, Jenson and Bond made Defendant John J. Nelson
26 ("Nelson") CEO of JDMH without Plaintiff's consent in order to form
27

28                                     3

1  a new company to which they transferred JDMH's assets.  (Id. at  ¶
2  23.)

3

4                        **II. Procedural Background**

5      On February 24, 2011, Plaintiff filed a complaint (#1) alleging
6  the following eight causes of action: (1) Breach of Contract; (2)
7  Breach of Implied Covenant of Good Faith and Fair Dealing; (3)
8  Breach of Fiduciary Duties; (4) Accounting; (5) Conversion; (6)
9  Fraud; (7) Unjust Enrichment; and (8) Fraudulent Conveyance.
10     On May 13, 2011, Defendants JDMH and Bond filed a Motion to
11 Dismiss (#9) pursuant to Federal Rule of Civil Procedure ("FRCP")
12 12(b)(2) for lack of personal jurisdiction and 12(b)(4) for
13 insufficient process.  Plaintiff responded (#11) on May 30, 2011,
14 and Defendant JDMH and Bond replied (#12) on June 9, 2011.
15     On June 9, 2011, Defendant Jenson filed a Joinder (#13) to
16 Defendant JDMH and Bond's motion to dismiss (#9).  Plaintiff
17 responded (#14) on June 30, 2011.  There was no reply.

18

19                          **III. Discussion**

20 **A. Personal Jurisdiction**

21     When a defendant moves to dismiss for lack of personal
22 jurisdiction pursuant to FRCP 12(b)(2), the burden falls on the
23 plaintiff to provide sufficient facts to establish jurisdiction.
24 Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir 2008).  A
25 plaintiff must show that there is personal jurisdiction under the
26 laws of the state where is it asserted and that the exercise of

27

28                              4

jurisdiction satisfies the requirements of constitutional due process.  Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994).  Where a motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).  Uncontroverted allegations must be taken as true and conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).

Nevada's long-arm statute permits jurisdiction over non-resident defendants to the full extent of the Constitution.  NEV. REV. STAT. § 14.065.  Where, as here, a state's long-arm statute is coextensive with the Constitution, the analysis of both is the same. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004).

**1. General Jurisdiction**

Plaintiff argues that Defendants are subject to general jurisdiction in Nevada.  To establish general personal jurisdiction, a plaintiff must demonstrate that the defendant has engaged in "continuous and systematic general business contacts" that "approximate physical presence" with the forum state. Schwarzenegger, 374 F.3d at 801 (internal quotation marks and citations omitted).  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be

haled into court in the forum state to answer for any of its activities anywhere in the world." Id.

The Supreme Court has found personal jurisdiction over a non-resident defendant in only one case, Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447-48 (1952), although it did not use the term "general jurisdiction" in its opinion. Nevertheless, the Court recently described Perkins as the "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." Goodyear v. Dunlop Tires Operations, S.A. v. Brown, --- U.S. ---, 131 S. Ct. 2846, 2856 (2011) (citation and internal quotation marks omitted). The facts of Perkins illustrate the nature and extent of the contacts required for general jurisdiction. The non-resident defendant was a Philippine corporation whose mining operation were suspended while the country was occupied during World War II. 342 U.S. at 447. The corporation's president, who was also its general manager and principal stockholder, returned to his home in Ohio, where he ran a corporate office. Id. at 447-48. The president kept business files in Ohio; handled corporate correspondence form Ohio; drew employees' salaries from accounts in Ohio banks and distributed paychecks; held directors' meetings while he was in Ohio; and carried on in Ohio a "continuous and systematic supervision" of the wartime limited activities of the company. Id. at 448. Because of the nature and extent of the corporation's activities in the state, Ohio became the corporation's place of business. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 779 n.11 (1984) (describing the facts of Perkins).

6

1  The Court therefore upheld the exercise of personal jurisdiction

2  over the corporation in Ohio arising out of activities unrelated to

3  contacts with Ohio.   Id.

4      Plaintiff argues that Defendants are subject to general

5  jurisdiction in Nevada on the basis of the following contacts:

6  Plaintiff, as president, CEO, officer, director, and fifty-percent

7  shareholder of JDMH, ran the daily operations of the company from

8  his residence in Nevada for several years (Decl. Daniels at ¶¶ 3-5

9  (#11-1)); Defendant Bond sent Plaintiff daily full cash flow reports

10 and bank receipts (id. at ¶ 10); Bond and Plaintiff usually spoke at

11 least twice daily regarding JDMH issues (id.); Defendant Jenson

12 traveled to Nevada for a handful of business meetings (Def. Marc S.

13 Jenson's Joinder at 5 (#13)); JDMH paid Plaintiff in Nevada through

14 ADP payroll services and therefore paid Nevada state taxes (Decl.

15 Daniels at ¶ 12 (#11-1)); JDMH sold its products to distributors who

16 sold the products in Nevada (id. at ¶ 13); JDMH sold its products

17 directly to Nevada residents via its website www.burnfree.com (id.

18 at ¶ 16); JDMH issued Plaintiff health insurance in Nevada (id. at ¶

19 18); the JDMH corporate liability insurance policy required

20 Plaintiff to carry supplemental auto liability insurance to cover

21 JDMH while driving personal vehicles during working hours (id.);

22 Plaintiff used JDMH company credit cards to make purchases in Nevada

23 (id. at ¶ 19); Plaintiff was a signatory on the JDMH checking

24 account which was used to make purchases in Nevada (id. at ¶ 20).

25      Plaintiff cannot establish general jurisdiction with regard to

26 Defendants Jenson and Bond - their dealings with Plaintiff as

27

28                                    7

1  employees of JDMH do not rise to the level that approximates a

2  physical presence in the state of Nevada.

3      However, while it is a close case, the Court finds that

4  Plaintiff has established a prima facie case of general personal

5  jurisdiction over JDMH.  Since its president and CEO was running the

6  company from Nevada at the time of the incidents underlying this

7  suit, the corporation maintained continuous and systematic business

8  contacts with the state amounting to a physical presence here.  Like

9  the president of the company in Perkins, Plaintiff set up shop and

10 ran JDMH from a jurisdiction different than where the company is

11 headquartered and maintains its principal place of business.  Since

12 operational control of JDMH was managed through Plaintiff's office

13 in Nevada, the corporation may reasonably expect to be haled into

14 court here, and the exercise of personal jurisdiction over JDMH is

15 appropriate.  Because the case is admittedly close, however, the

16 court will also analyze the issue of specific personal jurisdiction

17 over JDMH, as well as the other individually-named Defendants

18 challenging jurisdiction, Jenson and Bond.

19      **2. Specific Jurisdiction**

20      Plaintiff argues that Defendants JDMH, Bond, and Jenson have

21 sufficient "minimum" contact with Nevada arising form, or related

22 to, its actions in dealing with Plaintiff such that the forum may

23 assert specific personal jurisdiction.  The Ninth Circuit has

24 established a three-prong test for analyzing a claim of specific

25 personal jurisdiction: (1) the defendant must purposefully direct

26 his activities or consummate some transaction with the forum or

27

28                                      8

resident thereof; *or* perform some act by which he purposefully
avails himself of the privileges of conducting activities in the
forum, thereby invoking the benefits and protections of its laws;
(2) the plaintiff's claim must arise out of that activity; and (3)
the exercise of jurisdiction must be reasonable. <u>Dole Food Co.,
Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations
omitted).

                a. Purposeful Direction

        The first prong of the specific jurisdiction test refers to
both purposeful direction and purposeful availment.  The Ninth
Circuit has explained that in cases involving tortious conduct, it
most often employs a purposeful direction analysis wherein a court
applies the "effects" test based on the Supreme Court's decision in
<u>Calder v. Jones</u>, 465 U.S. 783 (1984). <u>Mavrix Photo, Inc. v. Brand
Techs., Inc.</u>, 647 F.3d 1218, 1228 (9th Cir. 2011) (citations
omitted).  By contrast, in contract cases, the Ninth Circuit
typically endorses an inquiry into whether a defendant purposefully
availed itself of the privilege of conducting activities or
consummated a transaction in the forum. <u>Yahoo!, Inc. v. La Lique
Contre le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1206 (9th Cir.
2006).

        This case involves claims based both in contract and in tort.
By Plaintiff's account, Defendants intended to and successfully
ousted him from the company, and then lured him into and then
violated his retirement agreement.  Necessarily taking Plaintiff's
allegations as true, we conclude that the purposeful direction

9

analysis is more appropriate to the facts at hand because the
conduct at issue was expressly targeted at an individual resident,
Plaintiff, of the forum state.  In other words, this case is more
like those utilizing the purposeful direction analysis due to a
defendant's intentional action toward a specific plaintiff and less
like those cases applying purposeful availment analysis wherein a
defendant's actions are not targeted toward any particular
plaintiff.  See Calder, 465 U.S. at 789 (distinguishing between
intentional action and "mere untargeted negligence" and holding that
"[a]n individual injured in California need not go to Florida to
seek redress from persons who, though remaining in Florida,
knowingly caused the injury in California."); Bancroft & Masters,
Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1088 (9th Cir. 2000)
(emphasizing that Calder required the defendant to individually and
wrongfully target the plaintiff and finding "express aiming" at
California where defendant sent letter to Virginia with intent to
disrupt the plaintiff's California business).

The Calder effects test requires that "the defendant allegedly
must have (1) committed an intentional act, (2) expressly aimed at
the forum state, (3) causing harm that the defendant knows is likely
to be suffered in the forum state."  Brayton Purcell LLP v. Recordon
& Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting Yahoo!, 433
F.3d at 1206).  First, we conclude that Defendants "committed an
intentional act."  Based on the allegations in the complaint, the
Defendants together intentionally ousted Plaintiff from JDMH, set up
a new entity that took over its assets, and then violated a

10

retirement agreement by discontinuing the agreed-upon monthly payments.  Second, we conclude that Defendants "expressly aimed at the forum state."  The express aiming requirement "is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  Bancroft, 223 F.3d at 1087.  Although the alleged wrongful conduct occurred in Utah, it was indisputably targeted at Plaintiff, whom Defendants knew to be a resident of Nevada.  We therefore turn to the question of harm, the third element of the Calder effects test.  We conclude that Defendants have caused harm that they know is likely to be suffered in the forum state.  The economic loss caused to Plaintiff was foreseeable, and it was foreseeable that the loss would be inflicted in Nevada where Plaintiff lives and from where he managed JDMH prior to his ouster.  Plaintiff has therefore successfully established that Defendants purposefully directed their activities toward Nevada.

b. Forum-Related Conduct

In determining whether a plaintiff's claims arise out of a defendant's local conduct, the Ninth Circuit follows the "but for" test.  Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001) (citation omitted).  Hence, a plaintiff must show that he would not have suffered an injury "but for" the defendant's forum related conduct.  Id.  Defendants argue that the acts that gave rise to this action took place in Utah and are therefore not related to activities in Nevada.  However, as related above, the relevant forum-related conduct in this case involves Plaintiff, as President

11

and CEO of JDMH, operating the company from Nevada and Defendants
allegedly acting wrongfully toward him.  For this reason, Plaintiff
would not have suffered harm but for Defendants cutting him off from
JDMH, an act purposefully directed toward Nevada.  Plaintiff's
claims therefore arise out Defendants' contacts with Nevada, and the
second prong of specific jurisdiction is satisfied.

        c. Reasonableness

    Finally, we turn to the reasonableness inquiry.  The Ninth
Circuit has developed a seven-factor test to determine whether the
exercise of jurisdiction over a nonresident defendant is reasonable:
(1) the extent of a defendant's purposeful interjection into the
forum state's affairs; (2) the burden on a defendant of defending in
the forum; (3) the extent of conflict with the sovereignty of the
defendant's home state; (4) the forum state's interest in
adjudicating the dispute; (5) the most efficient judicial resolution
of the controversy; (6) the importance of the forum to the
plaintiff's interests in convenient and effective relief; and (7)
the existence of an alternative forum.  Myers, 238 F.3d at 1075.
"None of the factors is dispositive in itself; instead, we must
balance all seven."  Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d
1482, 1487-88 (9th Cir. 1993).  Furthermore, because Defendants
purposefully directed their activities toward Plaintiff in Nevada,
the burden is now placed on Defendants to "present a compelling case
that the presence of some other considerations would render
jurisdiction unreasonable."  Myers, 238 F.3d at 1075 (quoting

12

1 <u>Panavision Intern., L.P. v. Toeppen</u>, 141 F.3d 1316, 1322 (9th Cir.
2 1998)).

3      Defendants cannot meet their burden of presenting a "compelling
4 case" of unreasonableness.  Defendants argue that they did not
5 purposefully interject themselves into Nevada's affairs, the burden
6 of defending in Nevada is high, and it would most efficient to
7 litigate the controversy in the alternative forum in the District of
8 Utah where all the witnesses reside and the underlying actions
9 occurred.  However, Plaintiff points out that the main Defendant,
10 Jenson, lives not in Utah but in Southern California.  (Compl. at ¶
11 7 (#1).)  Further, Defendants give short shrift to Nevada's and
12 Plaintiff's interest in litigating the issue in Nevada and the
13 extent of their purposeful interjection into the state's affairs via
14 their dealings with Plaintiff.  Defendants have therefore failed to
15 meet their high burden, and the third prong of establishing specific
16 jurisdiction is satisfied.

17      In sum, the Court concludes that Plaintiff has presented a
18 prima facie case of specific jurisdiction over Defendants JDMH,
19 Jenson, and Bond to survive a motion to dismiss for lack of personal
20 jurisdiction.

21 **B. Insufficient Process**

22      FRCP 12(b)(4) permits a defendant to move to dismiss an action
23 for insufficient process.  Defendants argue that the summons served
24 upon Defendants JDMH and Bond does not state Plaintiff's name, but
25 rather names JDMH as a plaintiff in this action.

26

27

28                                        13

1    FRCP 4(a)(1)(4)(A) provides that a summons must "name the court
2  and the parties."  The Ninth Circuit has held that "Rule 4 is a
3  flexible rule that should be liberally construed to uphold service
4  so long as a party receives sufficient notice of the complaint."
5  Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir.
6  1994) (citation omitted).  "Technical defects in a summons do not
7  justify dismissal unless a party is able to demonstrate actual
8  prejudice."  Id.  Defendants have not alleged that they suffered any
9  prejudice due to the technical defect in the summons.  Further, the
10 complaint, properly naming the parties, was concurrently served with
11 the summons.  Defendants' motion to dismiss for insufficient process
12 must therefore be denied.

13

14                            **IV. Conclusion**

15    The Court finds that it has both general jurisdiction and
16 specific jurisdiction over Defendant JDMH.  Additionally, Plaintiff
17 has established a prima facie case of specific jurisdiction over
18 Defendants Jenson and Bond, in that Plaintiff's injuries arise of
19 out of their contacts purposefully directed at the State of Nevada.
20    Further, the Court will not dismiss Plaintiff's complaint for
21 reason of insufficient service due to a mere technical error in the
22 summons where Defendants had actual notice of the complaint.

23

24    **IT IS, THEREFORE, HEREBY ORDERED** that Defendants Bond and
25 JDMH's Motion to Dismiss (#9) is **DENIED**.

26

27

28                                14

1    **IT IS FURTHER ORDERED** that Defendant Jenson's Joinder (#13) to

2  Defendant Bond and JDMH's Motion to Dismiss (#9) is **DENIED**.

5  DATED: February 1, 2012.

_____
UNITED STATES DISTRICT JUDGE

15